FILED
2025 May-02  PM 03:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **STACY HAMER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 5:24-cv-0059-LCB** |
| | ) | |
| **SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| **Commissioner**, | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

On January 1, 2024, the Claimant, Stacy Hamer, who alleges disability due to debilitating back pain, filed a complaint seeking judicial review of an adverse decision of the Commissioner of the Social Security Administration ("the Commissioner") pursuant to 42 U.S.C. § 405(g). Doc. 1. The Commissioner filed an answer and a copy of the administrative record on March 19, 2024. Doc. 6. Hamer filed a brief in support of her position on May 17, 2024, and the Commissioner filed a response on June 10, 2024. Docs. 9, 10. Hamer did not file a reply brief. Accordingly, the issues are now fully briefed, and Hamer case is ripe for review. For the reasons set forth below, the Commissioner's final decision is due to be affirmed.

## I.    BACKGROUND

On May 29, 2020, Hamer protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning May 1, 2016. Doc. 6-4 at 31. In her claim, Hamer alleged her impairments as "back issues, left leg, nerve pain, and radiculopathy." *Id.* Her claim was denied initially on November 10, 2020, and upon reconsideration on May 3, 2021. *Id.* Thereafter, Hamer then requested a hearing before an Administrative Law Judge ("the ALJ"). *Id.* The ALJ held a telephone hearing on January 4, 2022. *Id.* Hamer testified at the hearing, as did an impartial vocational expert ("VE"). *Id.* The ALJ subsequently issued an unfavorable decision. *Id.* Hamer requested review of the ALJ's decision by the Appeals Council. *Id.* at 45. The Appeals Council found that "a portion of the [January 4, 2022] hearing recording [was] inaudible." *Id.* Because "[a]ll evidence upon which the Administrative Law Judge relies for the decision must be contained in the record," the Appeals Council was "unable to assess whether the decision is supported by substantial evidence." *Id.* Accordingly, the Appeals Council remanded Hamer's claim back to the ALJ to hold another hearing. *Id.*

On February 27, 2023, the ALJ held a second hearing, wherein Hamer testified, as did an impartial vocational expert. Doc. 6-3. Thereafter, the ALJ issued an unfavorable opinion. *Id.* Hamer appealed the ALJ's decision to the Appeals

Council, which affirmed the ALJ's decision. *Id.* Hamer initiated this action on January 19, 2024. Doc. 1.

## II.    THE ALJ'S DECISION

To determine whether a claimant is disabled, the ALJ follows a five-step evaluation process set forth by the Social Security Administration.  *See* 20 CFR 416.920(a).  The steps are followed in order and, if it is determined that the claimant is or is not disabled at any particular step of the evaluation process, the ALJ will not proceed to the next step.  After the February 7, 2023, hearing, the ALJ issued a written opinion explaining the decision.  Doc. 6-3.  In her decision, the ALJ followed the five-step evaluation process set forth by the Social Security Administration.

The first step requires the ALJ to determine whether the claimant is engaging in substantial gainful activity, which is work involving significant physical or mental activities usually done for pay or profit.  *See Green v. Comm'r, Social Sec. Admin.*, 555 Fed. App'x 906, 907–08 (11th Cir. 2014).  If a claimant is engaged in substantial gainful activity, she is not disabled, and the inquiry stops.  Otherwise, the ALJ will proceed to step two.  In the present case, the ALJ found that Hamer was not engaged in substantial gainful activity during the relevant period. Doc. 6-3 at 24. Accordingly, the ALJ moved on to the second step of the evaluation.

At step two, an ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is

3

"severe." 20 CFR 416.920(c). An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities…." *Id.* If a claimant does not have a severe impairment, she is not disabled, and the inquiry ends. If she does have a severe impairment, the ALJ will proceed to the third step. In the present case, the ALJ found that Hamer had a severe impairment of degenerative disc disease of the thoracic and lumbar spine. Doc. 6-3 at 24 (citing 20 CFR 404.1520(c).[1]

At the third step, an ALJ determines whether the claimant's impairments or combination thereof are of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix I. If the claimant's impairment or impairments meet or equal a listed impairment, then the claimant is disabled, and the evaluation ends. Otherwise, the ALJ proceeds to the next step. In this case, the ALJ found that Hamer's impairment did not meet or equal any of the listed criteria and proceeded to step four. Doc. 6-3 at 27 (citing 20 CFR 404.1520(d), 404.1525, and 404.1526).

Step four of the evaluation requires an ALJ to first determine the claimant's residual functional capacity ("RFC"). 20 CFR 416.920(f). After that, the ALJ must

---

[1] Medical evidence of record showed Hamer also had hypertension, asthma, depression, and anxiety. Doc. 6-3 at 25. The ALJ found that these medically determinable impairments created no more than minimal work-related limitations and, therefore, were non-severe impairments. *Id.* Hamer does not challenge this finding in her complaint or brief. Thus, the Court limits its discussion to only those impairments that Hamer challenges.

determine whether a claimant has the RFC to perform the requirements of any past relevant work. *Id.* The term "past relevant work" means work performed within the last 15 years prior to the alleged date of onset. If a claimant has the RFC to perform past relevant work, she is not disabled, and the evaluation stops. Otherwise, the evaluation proceeds to the final step. In Hamer's case, the ALJ found that she had the following RFC:

> "[T]o perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. She can stand and walk (with normal breaks) for 6 hours in an 8-hour workday and sit (with normal breaks) for 6 hours in an 8-hour workday. She can occasionally climb ramps and stairs but never climb ladders, ropes, and scaffolds. She can occasionally balance on rough, uneven terrain and surfaces. She can occasionally stoop, kneel, crouch, and crawl. She can tolerate occasional exposure to wetness, moderate noise (e.g., office environment), vibrations, and fumes, odors, dust, gases, and poor ventilation. She cannot work at unprotected heights or around moving unguarded machinery."

Doc. 6-3 at 28. Given this RFC, the ALJ concluded that Hamer was able to perform past relevant work as a medical assistant. Doc. 6-3 at 32. Specifically, the ALJ accepted the VE's testimony that someone with Hamer's RFC "would be able to perform past work as a medical assistance, both as actually and generally performed," but "would be unable to perform past work as a hospice nurse and trainer or registered nurse, either as generally or actually performed." *Id.* at 32–33.

Additionally, considering the RFC and Hamer's age, education, and work experience, the ALJ found that there exist a significant number of other jobs in the

national economy that Hamer could perform. *Id.* at 33. The ALJ, adopted the VE's testimony that based on Hamer's RFC, age, education, and work experience, she could "perform the requirements of representative occupations such as" a cashier, sale attendant, and marker. *Id.* at 34. According to the VE, those jobs exist in sufficient number in the national economy. *Id.* Based on the findings above, the ALJ concluded that Hamer "was capable of making a successful adjustment to other work that existed in significant numbers the national economy" so that she was not disabled. *Id.*

### III.    STANDARD OF REVIEW

This Court must review the record and determine whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C.§ 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Winschel v. Comm'r of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).  The Court's role in review is limited so that the Court must not "decid[e] the facts anew, mak[e] credibility determinations, or re-weigh[] the evidence."  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  Instead, the Court will scrutinize the record, and affirm if the decision is supported by substantial evidence, even if the evidence preponderates against the Commissioner's findings.  *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264 (11th Cir. 2015); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  Substantial evidence is "more than a mere scintilla" but "less than a

6

preponderance" and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)).

## IV.    HAMER'S ARGUMENT

Hamer raises one argument in her brief. She argues that the ALJ failed to properly evaluate her subjective complaints—that is, of debilitating back pain—under the Eleventh Circuit's pain standard so that her decision is not supported by substantial evidence. Doc. 10 at 5.   Specifically, Hamer argues that the ALJ "did not properly consider all the Plaintiff's medical records when reaching her decision" and that the "ALJ's selective treatment of the Plaintiff's records is inconsistent with the governing legal standard." *Id.* at 8.

## V.    ANALYSIS

### 1.   <u>There is Substantial Evidence to Support the ALJ's Decision.</u>

To determine whether a claimant is disabled as defined by the Social Security Administration, an ALJ evaluates all symptoms, including subjective complaints, such as pain and how the symptoms affect a claimant's daily life and ability to do work.  20 CFR § 404.1529(a).  But a claimant's subjective complaints alone are insufficient to establish a disability.  *Id.*  Rather the ALJ will apply a two-step analysis. *Id.* at § 404.1529(a)–(b).  First, the ALJ looks for either objective medical signs or laboratory findings that there is a medical impairment that could reasonably

be expected to produce the symptoms alleged. *Id.* If this first step is satisfied, the ALJ evaluates the intensity and persistence of the symptoms to determine how the symptoms limit the claimant's capacity for work. *Id.* at § 404.1529(c). Specifically, the ALJ considers whether an individual's statements about the intensity, persistence, and limiting effects of her symptoms are consistent with the medical signs and laboratory findings in the record. *Id.*; *see also* SSR 16-3p. If the two are inconsistent, the ALJ may properly determine that the individual's symptoms are less likely to reduce her capacity to perform work-related activities, so that she is not disabled as defined by the Social Security Administration. SSR 16-3p.

In the Eleventh Circuit, a claimant can establish a disability based on testimony of pain and other symptoms by satisfying two parts of a three-part test (the pain standard): (1) evidence of an underlying medical condition; *and* (2) either (a) objective medical evidence confirming the severity of the alleged pain, *or* (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *Holt v. Sullivan*, 821 F.2d 1221, 1223 (11th Cir. 1991). If a claimant satisfies the three-part test, the ALJ still considers the intensity, persistence, and limiting effects of a claimant's pain or other symptoms. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).

The Eleventh Circuit created the pain standard when it interpreted 20 CFR § 404.1529. *See Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002) (citing

*Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1214–15 (11th Cir. 1991)).  The pain standard and the Commissioner's regulations at 20 CFR § 404.1529 are consistent so that application of § 404.1529 is also application of the Eleventh Circuit pain standard.  *Wilson*, 284 F.3d at 1226.

### A. The ALJ properly evaluated Hamer's subjective complaints with the objective medical evidence.

At the February 27, 2023, hearing, Hamer testified and listed her various subjective complaints regarding her pain and how it affects her daily living and ability to work.  Doc. 6-3 at 40–62.  After this hearing, the ALJ issued her written opinion finding that Hamer was not disabled. *Id.* at 22–34. In her opinion, the ALJ followed the five-step evaluation process discussed above and set forth in 20 CFR 416.920(a). *Id.* As explained above and detailed below, the ALJ's analysis hinged on step four of the evaluation process, which required an examination of Hamer's RFC and her ability to perform any relevant past work. *Id.*; *see* discussion *supra* pp. 5–6. Additionally, Hamer's main challenge is that the ALJ did not properly evaluate her subjective pain complaints when determining that based on her RFC, she could perform relevant past work. Doc. 20 at 5. Accordingly, the Court must determine whether the ALJ properly evaluated Hamer's subjective complaints of pain.

The ALJ began her analysis using the two-step process created by the Commissioner in 20 CFR § 404.1529 to evaluate subjective complaints of pain.[2] Doc. 6-3 at 28.  The first step requires "evidence of an underlying medical condition." *Holt*, 821 F.2d at 1223. Based on Hamer's testimony and the objective medical evidence, the ALJ determined that Hamer had "medically determinable impairments [that] could reasonably be expected to cause the alleged symptoms," which satisfies the first step.  Doc. 6-3 at 29.

Next, the ALJ turned her inquiry to whether Hamer's complaints were confirmed by the objective medical evidence. *Holt*, 821 F.2d at 1223; Doc. 6-3 at 29. At this step, the ALJ found that Hamer's statements "concerning the intensity, persistence[,] and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence the record[.]" *Id.* That is, Hamer failed to satisfy the second part of the test. Thus, the ALJ concluded that Hamer's RFC "result[s] in some limitation, but do not prevent [her] from performing a limited range of light work" so that Hamer was not considered disabled by the Social Security Administration. *Id.* at 32, 34. Hamer challenges this conclusion in her brief. Doc. 10.

---

[2] Notably, the ALJ's application and discussion of the two-part test from 20 CFR § 404.1529 is also application of the Eleventh Circuit's pain standard.

To support her claim of disability due to debilitating back pain, Hamer testified that in 2015, she had surgery to repair a ruptured disc in her back. Doc. 6-3 at 48. Following that surgery, she never regained full feeling in her left leg or foot, and she had to stop working in 2016. *Id.* Hamer testified that she had muscle pain and stiffness in both sides of her spine and lower back, nerve pain in her left leg so that her left "foot felt like pins and needles." *Id.* At the time of her testimony, Hamer stated she could not walk for more than ten minutes, could not sit in a straight upright position for more than ten minutes, and could not lift more than 15 pounds. *Id.*

However, the ALJ found that these subjective complaints were inconsistent with the objective medical evidence. *Id.* at 29. In reaching this conclusion, the ALJ discussed Hamer's medical records and history at length. *Id.* The ALJ noted that although Hamer had complained of debilitating back pain in 2016, she opted for conservative treatment with lumbar injections. *Id.* And, after two injections in 2016, Hamer did not receive or seek any treatment until 2019. *Id.* In 2019, Hamer continued treatment for her pain with lumbar injections and physical therapy but made only "minimal progress" due to "scheduling" and "lack of compliance with visits and home exercise program." *Id. at 30.*

Additionally, the ALJ noted that that Hamer's "treatment records throughout the remainder of 2019 showed" normal musculoskeletal findings, that Hamer stated her medication was "somewhat beneficial," and that she was ambulating normally

in both October and December of 2019. *Id*. And, while Hamer complained of intermittent weakness in the left leg, there was no objective medical evidence to support any weakness or numbness. *Id*. Further, although Hamer sought treatment multiple times in 2020 for worsening back pain, she always had normal range of motion in the extremities, normal motor and sensory examinations, and was in no acute distress. *Id*. at 31.

Finally, the ALJ relied on the testimony of two medical doctors. *Id*. at 31–32. The ALJ relied on Dr. Robert Heilpern's and Dr. Victoria Hogan's opinions that Hamer could perform work-related activities within a limited range of light exertion with additional function limitations, including occasionally lifting and/or carrying 20 pounds and frequently lifting and/or carrying 10 pounds, and standing and/or walking with normal breaks. *Id*. Additionally, the ALJ found Dr. Hogan's opinion more persuasive because she found "additional functional limitations regarding wetness, noise, vibrations, and pulmonary irritants" that "further accounted for the claimant's subjective complaints." *Id*. Accordingly, based on the above, the ALJ determined that the RFC "was supported by careful consideration of the combination of impairments, which result in some limitation, but do not prevent the claimant from performing a limited range of light work as defined above. [Hamer's] allegations to the contrary are not supported by the record as a whole." *Id*. at 32.

Hamer argues that "[t]he ALJ's articulated reasons to support her findings are not supported by substantial evidence as they were based upon an incomplete and erroneous analysis of the record." Doc. 10 at 8–9. To support this argument, Hamer dedicates almost five pages of her brief to detail her medical history. *Id.* at 8–13. However, this recitation of medical history—which is already in the record and was relied upon by the ALJ, a point Hamer concedes—is not persuasive to convince this Court that the ALJ did not consider the complete medical evidence in her analysis of Hamer's claim.

Next, Hamer argues that the ALJ "did not properly consider all [of her] medical records when reaching her decision." Doc. 10 at 8. Specifically, Hamer argues that while the ALJ noted Hamer stated her medication for the pain was "somewhat beneficial," the ALJ did not account for the fact that Hamer said the medication was "not improving function." *Id.*; *see* Doc. 6-10 at 101. However, there are over 500 pages of medical evidence in the record, and the ALJ's two-page summary could not possibly include every detail of Hamer's medical records. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (explaining that the ALJ need not "specifically refer to every piece of evidence in th[e] decision" as long as the decision allows the court to conclude that the ALJ considered the medical condition as a whole). All the same, the ALJ's two-page summary does show a thorough review and consideration of all the objective medical evidence.

Finally, Hamer argues that the ALJ found Hamer's allegations inconsistent with the record "in part because the ALJ determined there was sporadic treatment at times." Doc. 10 at 14. Hamer points out that the ALJ's analysis noted "despite complaints of debilitating back pain, [ ] the record contained a fairly large gap in treatment." *Id.*; *see* Doc. 6-3 at 29. This, argues Hamer, is improper because the ALJ "did not consider possible explanations" for the lack of treatment from 2016 to 2019. Hamer argues that Social Security Ruling 16-3p requires an ALJ to consider possible explanations for the lack of treatment. Doc. 10 at 14 (quoting 16-3p). According to Hamer, "the ALJ did not properly consider the evidence which demonstrated [she] was unable to afford consistent medical care." *Id.* at 15 (citing *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003)).

Social Security Rule 16-3p does state that an individual's failure to comply with or seek treatment cannot be used as a basis to find an inconsistency without considering other possible explanations. *See* Social Security Ruling 16-3p. Regardless, there is nothing in the ALJ's analysis that shows that the ALJ relied exclusively on Hamer's lack of treatment from 2016 to 2019 to find that she was not disabled. *See Maxwell v. Social Security Administration, Commissioner*, 4:23-cv-1605-AMM, 2025 WL 817122, at *6 (N.D. Ala. Mar. 13, 2025) (explaining that an ALJ's consideration of lack of treatment was not improper when it was not the exclusive basis of the ALJ's treatment). Instead, the ALJ simply noted the time-gap

14

in treatment in one sentence and did not mention it again. Thus, the ALJ's note of any sporadic treatment does not show that her analysis is not supported by substantial evidence.

Substantial evidence supports the ALJ's finding. The Court does not assess whether *some* evidence supports Hamer's contentions that she has disabling limitations, but whether substantial evidence supports the ALJ's decision to find that claim unpersuasive. *Moore v. Barnhart*, 405 F.2d 1208, 1211 (11th Cir. 2005). Substantial evidence means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Viator v. Social Security Administration, Commissioner*, 6:22-cv-1518-HNJ, 2024 WL (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). Here, the ALJ relied upon the two State agency medical consultants in making the determination that Hamer had an RFC that would allow her to perform a limited range of light work with certain restrictions and that she could perform relevant past work as a medical assistant. As explained by the ALJ, the "additional limitations further account[] for [Hamer's] subjective complaints." Doc. 6-3 at 32. Accordingly, her finding is supported by substantial evidence, and should be affirmed.

## VI.    CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED.** The

Clerk is **DIRECTED** to close this case.

**DONE** and **ORDERED** this May 2, 2025.

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE